UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:20-cr-00165 |
| v. | ) | |
| | ) | Judge William L. Campbell, Jr. |
| CALEB D. JORDAN | ) | |

## PLEA AGREEMENT

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney S. Carran Daughtrey, and defendant, Caleb D. Jordan, through defendant's counsel, Kathleen G. Morris and Jodie A. Bell, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.      Defendant acknowledges that he has been charged in the indictment in this case with the following offenses:

    a.   Counts One through Seven: Sexual Exploitation of Children (Production), in violation of Title 18, United States Code Section 2251(a) and (e);

    b.   Count Eight: Extortion, in violation of Title 18, United States Code Section 875(b);

    c.   Count Nine: Distribution of Child Sexual Abuse Material, in violation of Title 18, United States Code Section 2252A(a)(2)(A); and

    d.   Count Ten: Possession of Child Sexual Abuse Material, in violation of Title 18, United States Code Section 2252A(a)(5)(B).

2.      Defendant has read the charges against him contained in the indictment. Those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

<u>Charge to Which Defendant Is Pleading Guilty</u>

3.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 6 of the indictment, charging production of child pornography.  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.  After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

<u>Penalties</u>

4.      The parties understand and agree that the offense to which defendant will enter a plea of guilty carries the following penalties:

- A minimum sentence of 15 years and a maximum sentence of 30;

- Supervised release for a minimum term of 5 years and a maximum term of life, pursuant to 18 U.S.C. § 3583(k);

- A fine of up to $250,000;

- A $100 special assessment;

- An additional special assessment of $5,000, pursuant to 18 U.S.C. § 3014(a); and

- An additional special assessment of not more than $50,000, 18 USC 2259A(a)(3).

Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

Defendant also understands that a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in

2

the future, regardless of whether the defendant currently has lawful temporary or permanent resident status.

Defendant also understands that as a result of his offense, he is subject to forfeiture of property as alleged in the indictment.

If defendant is convicted of a sex offense involving a minor victim and has a prior sex offense conviction in which a minor was a victim, then defendant will be subject to a mandatory life sentence, pursuant to 18 U.S.C. § 3559(e).

### Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

5.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case number 3:20-cr-00165.

6.    Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

a.    If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b.    If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent;

3

that the government bears the burden of proving defendant guilty of the charge(s) beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

        c.     If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

        d.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

        e.     At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

     7.     Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

Factual Basis

     8.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count 6 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

4

a. At all relevant times, Caleb D. Jordan (hereinafter "defendant") resided in and engaged in the conduct described below from Mount Juliet, Tennessee, within the Middle District of Tennessee. At all relevant times, Minor Victims 1, 2, and 3 were under the age of 18 and resided outside the state of Tennessee. Minor Victims 1 and 2 are brothers.

With respect to Count 6 of the indictment, on or about February 3, 2020, within the Middle District of Tennessee and elsewhere, the defendant employed, used, persuaded, induced, enticed, and coerced Minor Victims 1, 2, and 3 to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and those visual depictions were transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce.

Specifically, at some point before December 2019, the defendant met Minor Victims 1, 2, and 3 over an online video gaming platform, and the four further communicated over a social-media website. While chatting with the Minor Victims over these platforms, the defendant represented to the Minor Victims that he was a billionaire who lived in a mansion and worked as a hacker for the government. The defendant initially paid the Minor Victims in video gaming currency in exchange for them creating and sending videos that depicted the Minor Victims sitting on one another's others' faces. Later, the defendant threatened the Minor Victims and told

5

them that people were coming to "get them" and that the defendant could prevent this if the Minor Victims produced videos for him that depicted them engaging in sex acts. The defendant further told Minor Victims 1 and 2 that one of their parents had committed a murder in the past and was trying to sell Minor Victims 1 and 2 on the black market for sex or body parts. The defendant fabricated an electronic website that purportedly showed Minor Victim 1 and 2's parent advertising the children's body parts for sale over the dark web. The defendant claimed that he could stop this from happening if the Minor Victims produced and sent him the requested videos. The defendant also threatened to kill or sexually assault Minor Victim 1, 2, and 3's parents if they did not produce videos for him. Minor Victim 1, 2, and 3 believed the defendant's threats and representations about himself.

The defendant gave the minor victims specific instructions as to how to produce videos for him. For example, he instructed Minor Victim 2 to lie on a bed with his head hanging backward over the side, and he further instructed Minor Victim 1 to insert his erect penis into Minor Victim 2's mouth. The defendant further instructed the Minor Victims to send the resulting videos to him over the internet.

On or about February 3, 2020, the defendant coerced and enticed the minor victims to create videos that depict the following acts: at least five videos depicting Minor Victim 1 penetrating Minor Victim 2's mouth with his naked, erect penis; a video depicting Minor Victim 1 masturbating; a video of Minor Victim 3 masturbating while crying; and a video of Minor Victim 3 attempting to insert a food item into his anus while crying. At the time of this offense, Minor Victim 1

was 14 years old, Minor Victim 2 was 11 years old, and Minor Victim 3 was 12 years old. These videos were all recovered from devices stored at the defendant's home in Mount Juliet, Tennessee.

b.      Defendant also acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), the following conduct, to which he stipulates, constitutes relevant conduct under U.S.S.G. § 1B1.3:

Starting in or before 2019, and continuing to the defendant's arrest in April 2020, the defendant coerced and enticed Minor Victims 1, 2, and 3 to create and send him approximately 391 videos that were created on approximately 60 to 80 separate days, including on December 11, 2019, and January 3, 8, 17, 27, and April 15, 2020. The videos depict Minor Victims 1, 2, and 3 engaging in various sex acts, including oral sex, masturbation, and/or the attempted insertion of items into their anuses. The Minor Victims are occasionally crying in the videos. Some of the videos depict Minor Victim 1 thrusting his penis into Minor Victim 2's mouth so hard that Minor Victim 2 gaged and choked. Chats between the defendant and the Minor Victims revealed that the defendant specifically instructed Minor Victim 1 to insert his penis so far into Minor Victim 2's mouth that Minor Victim 2 would choke and turn red. The defendant further stated that he did not care if the Minor Victims choked or vomited during the sex acts, and he told the Minor Victims that if the videos were not perfect, he would make them create the videos again.

The defendant caused the Minor Victims to create these videos in part so he could sell them over an encrypted internet-based chatting application ("Application

7

A") under the online name "Kid Crazy." Some of the videos depicting the Minor Victims recovered from the defendant's devices had been modified to include a "Kid Crazy" logo, and at one point, the defendant instructed Minor Victim 1 to create a video in which he states, "I am Kid Crazy."

In or about April 2020, an undercover Homeland Security Investigations agent was conducting undercover operations on Application A and learned from other users that another Application A user named "Kid Crazy" was making child sexual abuse material ("CSAM") available for purchase. The undercover agent engaged "Kid Crazy" online and arranged for the purchase of a video in exchange for $100. "Kid Crazy" sent the agent a video, which began with a title card that included the name "Kidcrazy" and depicted Minor Victim 1 thrusting his erect penis into Minor Victim 2's mouth until Minor Victim 2 gagged. A logo reading "KIDCRAZY" appeared at the bottom of the video throughout. After the undercover agent purchased the video, he and other agents from Homeland Security Investigations used information provided by "Kid Crazy" to identify him as the defendant. Homeland Security Investigations determined that the defendant earned additional proceeds from selling CSAM under the name "Kid Crazy."

In April 2020, Homeland Security Investigations agents executed a search warrant at the defendant's home in Mount Juliet and arrested him. They seized devices from the defendant that included more than 10,000 CSAM images and videos that included depictions of severe bondage and the penetration of infants. The victims depicted in the defendant's CSAM collection ranged from infancy to

adolescence. The majority of it depicted boys being penetrated by adult men's penises.

In engaging in this conduct and the conduct described in paragraph 12 of this document, the defendant used the items defined below as "Subject Property" to store, possess, distribute, access, view, advertise, and/or produce child pornography, and/or to communicate with Minor Victims 1, 2, and 3.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

<u>Sentencing Guidelines Calculations</u>

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2018 and reprinted on September 15, 2021.

10. For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

    a. Offense Level Calculations.

        i. Under U.S.S.G. § 2G2.1(d)(1), the offense involved the exploitation of more than one minor, and Chapter Three, Part D shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.

9

ii.    As to Minor Victim 1:

1. The base offense level for the count of conviction and relevant conduct is 32, pursuant to U.S.S.G. § 2G2.1(a).

2. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(1)(B) because Minor Victim 1 had attained the age of 12 years but not the age of 16 years.

3. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(2)(C) because the offense involved the commission of a sexual act and conduct described in 18 U.S.C. § 2241(a)—i.e., the defendant knowingly caused Minor Victim 1 to engage in a sexual act by threatening or placing Minor Victim 1 in fear that any person will be subjected to death, serious bodily injury, or kidnapping.

4. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(3) because he knowingly engaged in distribution.

5. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(4) because the offense involved material that portrays sadistic or masochistic conduct.

6. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(6)(B) because for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or an

10

interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct, or to otherwise solicit participation of a minor in such conduct.

iii.    As to Minor Victim 2:

1. The base offense level for the count of conviction and relevant conduct is 32, pursuant to U.S.S.G. § 2G2.1(a).

2. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(1)(A) because Minor Victim 2 had not attained the age of 12 years.

3. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(2)(C) because the offense involved the commission of a sexual act and conduct described in 18 U.S.C. § 2241(a)—i.e., the defendant knowingly caused Minor Victim 2 to engage in a sexual act by threatening or placing Minor Victim 2 in fear that any person will be subjected to death, serious bodily injury, or kidnapping.

4. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(3) because he knowingly engaged in distribution.

5. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(4) because the offense involved material that portrays sadistic or masochistic conduct.

11

6. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(6)(B) because for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct, or to otherwise solicit participation of a minor in such conduct.

iv. As to Minor Victim 3:

1. The base offense level for the count of conviction and relevant conduct is 32, pursuant to U.S.S.G. § 2G2.1(a).

2. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(1)(B) because Minor Victim 3 had attained the age of 12 years but not the age of 16 years.

3. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(2)(C) because the offense involved the commission of a sexual act and conduct described in 18 U.S.C. § 2241(a)—i.e., the defendant knowingly caused Minor Victim 3 to engage in a sexual act by threatening or placing Minor Victim 3 in fear that any person will be subjected to death, serious bodily injury, or kidnapping.

4. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(3) because he knowingly engaged in distribution.

12

5. The defendant should receive a four-point enhancement under U.S.S.G. § 2G2.1(b)(4) because the offense involved material that portrays sadistic or masochistic conduct.

6. The defendant should receive a two-point enhancement under U.S.S.G. § 2G2.1(b)(6)(B) because for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct, or to otherwise solicit participation of a minor in such conduct.

v.      Under U.S.S.G. § 3D1.4, the defendant should receive a three-level enhancement because the offense involved three units.

vi.      Under U.S.S.G. § 4B1.5(b), the defendant should receive a five-point enhancement because his offense of conviction is a covered sex crime, neither U.S.S.G. §§ 4B1.1 nor 4B1.5(a) apply, and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

vii.      Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his intention to enter a plea of guilty,

13

thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

        viii.        Under U.S.S.G. Chapter 5, Part A, Application Note 2, a total offense level of more than 43 is to be treated as an offense level of 43.

Therefore, the parties agree to recommend to the Court a final offense level of 43 (the "Recommended Offense Level"). Defendant understands that the offense level as ultimately determined by the Court (the "court-determined offense level") may be different from the Recommended Offense Level. Defendant likewise understands that the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from the Recommended Offense Level.

        b.        Defendant is aware that the Recommended Offense Level is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the U.S.S.G. recommendations of the parties, defendant will have no right to withdraw his guilty plea.

## Agreements Relating to Sentencing

11.     This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). The parties recognize that the sentence of incarceration will be no less than the mandatory minimum sentence of 180 months and no more than the statutory maximum of 360 months. The parties have agreed that the Court remains free to impose the sentence of incarceration that it deems appropriate. The parties also have agreed that the sentence imposed by the Court shall include a lifetime term of supervised release that include the special conditions listed in the paragraph below. If the Court accepts and imposes the agreed term and conditions of supervised release set forth herein, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed term and conditions of supervised release, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this Plea Agreement.

12.     Defendant understands and agrees that:

a.     Pursuant to Title 18, United States Code, Section 3583(k), he is subject to supervised release for a minimum of five years up to life.  In this case, defendant agrees to serve a lifetime term of supervised release after his incarceration.

b.     Defendant will submit to sex offender evaluation and treatment as recommended by an appropriate provider contracted per the guidelines and procedures promulgated by the Administrative Office of the United States Courts.

c.     Defendant will register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school, in compliance with Title 18, United States Code, Section 2250(a).

d.    Defendant shall not have any contact, other than incidental contact in a public forum such as in a restaurant, grocery store, etc., with any person under the age of 18 (except his children) without prior approval of the probation officer. Any approved contact shall be supervised by an adult at all times. The contact addressed in this condition includes, but is not limited to, direct or indirect, personal, telephonic, written, or through a third party. If the defendant has any contact with any child (person under the age of 18 years old), not otherwise addressed in this condition, the defendant is required to immediately remove himself from the situation and notify the probation office within 24 hours.

e.    The defendant shall not possess or use a device capable of creating pictures or video without the prior permission of the U.S. Probation Office.

f.    The defendant shall not possess or use a computer or any device with access to any "on-line computer service" at any location (including place of employment) without the prior written approval of the United States Probation Office. This includes any Internet service provider, bulletin board system, or any other public or private network or e-mail system. The defendant's residence shall not contain any electronic devices capable of Internet access without prior approval of the probation officer.

g.    The defendant shall consent to the U.S. Probation Office conducting unannounced examinations of the defendant's computer system(s), mobile devices, and internal/external storage devices, which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection. The defendant will consent to having installed on the defendant's computer(s), any hardware/software to monitor computer use or prevent

16

access to particular materials. The defendant will further consent to periodic inspection of any such installed hardware/software to ensure it is functioning properly. The defendant shall pay all or part of the cost of the installation of and the continuing use of the monitoring program used if the United States Probation Office determines the defendant has the financial ability to do so or has appropriate insurance coverage to pay for such treatment.

h.     The defendant shall provide the U.S. Probation Office with accurate information about the defendant's entire computer system (hardware/software) and internal/external storage devices; all passwords used by the defendant; and will abide by all rules regarding computer use and restrictions as provided by the U.S. Probation Office.

13.     Regarding restitution, the parties acknowledge that the amount of restitution will be owed to victims under Title 18, United States Code, Sections 2259 and 3663A. At the time of this agreement, however, no restitution estimates have been made. Once restitution estimates are made, the defendant understands that pursuant to Title 18, United States Code, Sections 2259 and 3663A, the Court must order defendant to make restitution, pursuant to *Paroline v. United States*.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing to the Clerk of the U.S. District Court.     Paragraphs 15 - 19 Omitted. SCO

### Forfeiture of Specific Property

20.     The Forfeiture Allegation of the indictment put the defendant on notice that upon conviction of Count Six, he shall forfeit to the United States the following property because it consists of property used or intended to be used to commit or to promote the commission of such offenses:

a.     Apple iPhone XR;

b.     Samsung laptop model NP530E5M;

17

     c.      PNY thumb drive (32G);

     d.      Sandisk Cruzer Glide thumb drive (64G);

     e.      Two silver/black thumb drives (1G);

     f.      Red thumb drive (32G); and

     g.      Sandisk red/black thumb drive labeled High Cotton (8G)

(hereinafter referred to collectively as "Subject Property").

21.    By entry of a guilty plea to Count 6, Defendant acknowledges that the Subject Property is subject to forfeiture pursuant to 18 U.S.C. § 2253, as it consists of property used or intended to be used to commit or to promote the commission of such offenses and further agrees that the Subject Property had a substantial connection to the crime of conviction.

22.    Prior to sentencing, Defendant relinquishes all claim, title, and interest to the Subject Property and agrees to the entry of a Preliminary Order of Forfeiture forfeiting the Subject Property to the United States and further agrees to the seizure of the Subject Property so that the Subject Property may be disposed of according to law.

23.    Defendant agrees to take steps as required by the United States to pass clear title to the forfeitable assets to the United States.

24.    Defendant is unaware of any third party who has an ownership interest in, or claim to, the Subject Property and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

25.    Defendant and the United States agree that every effort will be made to credit the value of any item forfeited against both the Order of Forfeiture and any restitution order via the remission and restoration process. However, the parties acknowledge that the ultimate discretion lies with the Money Laundering and Asset Recovery Section of the U.S. Department of Justice regarding whether to grant or deny any request related to the remission or restoration process.

26. Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

27. Defendant also agrees to waive any and all constitutional and statutory challenges to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

### Presentence Investigation Report/Post-Sentence Supervision

28. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

29. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

19

30.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Plea

31.     The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

32.     Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence on incarceration in exchange for the government agreeing to dismiss the remaining charged counts at sentencing. Defendant further waives all appellate rights and all collateral attacks concerning forfeiture and all matters related thereto. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant

to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence of incarceration.

### Other Terms

33.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

34.     Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

### Conclusion

35.     Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

36.     Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement,

21

rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

37.    Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

38.    No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

39.    Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 1-31-23          Caleb D Jordan
                                   Caleb D. Jordan
                                   Defendant

40.    Defense Counsel Signature: I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 1/31/2023          Kathleen G. Morris

22

Attorney for Defendant

Date: 1 - 31 · 23

Jodie A. Bell

Attorney for Defendant

23

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By: S. Carran Daughtry
S. Carran Daughtry
Assistant U.S. Attorney

Stephanie N. Toussaint
Stephanie N. Toussaint
Deputy Criminal Chief